**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Hypercom Corporation, ) | No. CV 04-0400-PHX-PGR |
| )  Plaintiff, ) | |
| ) vs. ) | |
| ) | **ORDER** |
| Omron Corporation, ) | |
| )  Defendant. ) | |
| ) | |

Currently pending before the Court is Defendant Omron Corporation's ("Omron") Second Motion for Summary Judgment (Doc. 136), and Plaintiff Hypercom Corporation's ("Hypercom") Motion to Strike Inadmissible Evidence and to Preclude Testimony of James Dunlop (Doc. 146). The Court now rules on the motions.[1]

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

Hypercom's causes of action in its Second Amended Complaint are based on the alleged concerted action between Omron and Verve L.L.C. ("Verve") to assert patent infringement claims against Hypercom (and other companies), without a good faith basis or probable cause to do so, in order to extort large cash settlements. According to Hypercom, Omron and Verve engaged in a harassment campaign against Hypercom and others by

---

[1] Although Defendant Omron requests that this Court grant oral argument regarding its Second Motion for Summary Judgment, the Court concludes that oral argument is unnecessary as it would not sufficiently assist the Court in rendering its opinion.

instituting costly, inconvenient, and groundless patent infringement suits for the sole purpose of acquiring cash settlements from the alleged infringers.[2] Verve, allegedly with Omron's assistance, filed lawsuits against Hypercom for patent infringement in Michigan, Texas, California and with the International Trade Commission. The patents at issue in the aforementioned lawsuits are U.S. Patent Nos. 4,678,895 ("the '895 Patent), 4,562,341 (the '341 Patent), and 5,012,077 ("the '077 Patent). Hypercom's claims against Omron include three counts: (1) civil conspiracy for abuse of process and malicious prosecution; (2) malicious prosecution; and (3) aiding and abetting abuse of process and malicious prosecution.

## II.     LEGAL STANDARD AND ANALYSIS

The standard for summary judgment is set forth in Rule 56(c) of the Federal Rules of Civil Procedure. Under this rule, summary judgment is properly granted when, after viewing the evidence in the light most favorable to the non-moving party, no genuine issues of material fact remain for trial. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of demonstrating that it is entitled to summary judgment. Mur-ray Mgmt. Corp. v. Founders Title Co., 819 P.2d 1003, 1005 (Ariz. Ct. App. 1991). If the moving party makes a prima facie case showing that no genuine issue of material fact exists, the burden shifts to the opposing party to produce sufficient competent evidence to show that a triable issue of fact does remain. Ancell v. United Station Assocs., Inc., 803 P.2d 450, 452 (Ariz. Ct. App. 1990). The Court must regard as true the non-moving party's evidence, if it is supported by affidavits or other evidentiary material. Celotex, 477 U.S. at 324. However, the non-moving party may not merely rest on its pleadings, it must produce some significant probative evidence tending to contradict the moving party's

---

[2] Omron is a Japanese company that develops, markets and manufactures electronic and sensory devices in the United States. Omron's patented technology includes electronic relays, switches, timers and sensory devices, certain medical equipment, and onboard equipment for automobiles. Verve is a patent holding company, and does not make or sell any products.

1 allegations and thereby creating a material question of fact.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57(1986)(holding that the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment); First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 289 (1968).

### A. Motion to Strike

As a preliminary matter, the Court will address Hypercom's Motion to Strike Inadmissible Evidence and to Preclude Testimony of James Dunlop (Doc. 146).  Pursuant to Fed. R. Civ. P. 16 and 56, and Fed. R. of Evid. 403, 702 and 703,  Hypercom moves the Court to enter an order precluding Omron from (1) using the testimony of James Dunlop, (2) using Mr. Dunlop's  patent analysis report submitted as Exhibit 9 to Omron's Second Motion for Summary Judgment, and (3) using Mr. Dunlop's movie.  Hypercom argues that the aforementioned evidence should be precluded because all are inadmissible under the applicable rules.

It is well settled that only admissible evidence may be considered by a trial court in ruling on a motion for summary judgment.  Beyene v. Coleman Sec. Services, 854 F.2d 1179, 1181 (9th Cir. 1988). For purposes of opposing a motion for summary judgment, the Court's position is that it is sufficient for the parties to object to the evidence presented by the moving party in their opposition  briefs. A motion to strike is unnecessary at this point in the litigation.  The Court reminds the parties that issues regarding the admissibility of evidence at trial are properly raised in a motion in limine.  The parties are to refer to Paragraph 7 of the governing Scheduling Order (Doc. 146) which states as follows: "Motions in limine shall be filed no later than the date of the filing of the Joint Pretrial Statement.  Responses to motions in limine are due ten business days after service.  No replies are permitted.  The hearing on the motions in limine, if one is permitted by the Court, will take place at the time of the Pretrial Conference.  No motion in *limine* shall be filed unless a statement of moving counsel is attached thereto certifying that after personal consultation and sincere efforts to do so, counsel have been unable to satisfactorily resolve the matter."

Therefore, Hypercom's Motion to Strike Inadmissible Evidence and to Preclude Testimony of James Dunlop (Doc. 146) is DENIED without prejudice.

### B. Civil Conspiracy

Hypercom relies on a conspiracy theory to support its state law claims against Omron. Under Arizona law, there is no civil action for conspiracy; however, "there is an action for damages caused by acts committed pursuant to a conspiracy." Estate of Hernandez v. Flavio, et al., 930 P.2d 1309, 1313 (Ariz. 1997). "For a civil conspiracy to occur two or more people must agree to accomplish a lawful objective with unlawful means, causing damages." Wells Fargo Bank v. Arizona Laborers, Teamsters, & Cement Masons Local No. 395 Pension Trust Fund, 38 P.3d 12, 36 (Ariz.. 2002). In sum, "liability for civil conspiracy requires that two or more individuals agree and thereupon accomplish an 'underlying tort which the alleged conspirators agreed to commit.'" Id. In this case, Hypercom maintains that Omron was an instigator for purposes of malicious prosecution, that Omron aided and abetted Verve's commission of the torts of malicious prosecution and abuse of process, and that Omron aided and abetted Raymond Galasso's[3] unreasonable and vexatious multiplication of proceedings against Hypercom. Hypercom names malicious prosecution and aiding and abetting Verve's commissions of malicious prosecution and abuses of process as the torts underlying the civil conspiracy.

The Defendant relies on the deposition testimony of its designated representative, executive director Tetsuyuki Nakano, to support its contention that Hypercom's civil conspiracy claim must fail. Omron maintains that Nakano's testimony affirms the following: (1) Omron did not participate in Verve's evaluation of potential infringement of the Omron-assigned patents; (2) in accordance with its contractual right, Omron only affirmed that Hypercom did not qualify as a business partner; and (3) Omron has not been involved, nor

---

[3] Raymond Galasso is the head of the intellectual property practice at the lawfirm of Simon, Galasso & Frantz P.L.C., and the founder and 50% owner of Verve. Kevin Imes owns the remaining 50% of Verve and is a patent agent, registered to practice before the U.S. Patent and Trademark Office.

1  does it intend to become involved, in Verve's prosecution of any claim against Hypercom,
2  including the administrative proceedings before the International Trade Commission ("ITC
3  Action"). Omron points to the following portions of Verve's principals', Raymond Galasso
4  and/ or Kevin Imes, deposition testimony to support its motion: (1) testimony that Verve,
5  rather than Omron, evaluated the Omron-assigned patents for potential infringement claims;
6  (2) testimony that Verve did not coordinate any aspect of the infringement lawsuits with
7  Omron; and (3) testimony that Verve did not routinely inform Omron of its progress in
8  prosecuting those suits. However, these facts remain disputed.

9       Despite Omron's claims to the contrary, the record before the Court reveals that there
10 are genuine issues of material fact left for trial as to whether Omron engaged in a civil
11 conspiracy with Verve. First, pursuant to a written agreement, Omron assigned its patent
12 rights to Verve and was entitled to receive a substantial percentage of the revenue resulting
13 from the litigation. Second, Omron was aware of and consented to Verve's plan to sue
14 Hypercom. Third, Omron employees and attorneys provided substantial assistance to Verve
15 in preparation for the ITC proceeding, including traveling to Japan to prepare a potential
16 witness, and contacting a Japanese attorney to provide assistance to Verve. Fourth, Omron
17 insisted that Verve be the named party in the infringement lawsuits so that Omron would
18 have "zero risk." Simply put, the aforementioned evidence is sufficient to create a question
19 of material fact as to whether Omron and Verve conspired to commit tortious acts at
20 Hypercom's expense.

21      **C.  Underlying State Law Claims**

22          **1.  Aiding and Abetting**

23      In its Second Amended Complaint, Hypercom claims that Omron aided and abetted
24 both abuses of process and malicious prosecutions by Verve. In Arizona, "a person who aids
25 and abets a tortfeasor is himself liable for the resulting harm to a third person." Wells Fargo
26 Bank, 38 P.2d at 23. A claim of aiding and abetting tortious conduct is made where (1) the
27 primary tortfeasor commits a tort that causes injury to the plaintiff, (2) the defendant has at
28 least a general awareness of the primary tortfeasor's tortious conduct; and (3) the defendant

substantially assists or encourages the primary tortfeasor in the achievement of the tort. Id. at 23-26.

Omron moves for judgment to be entered in its favor regarding Hypercom's aiding and abetting claim by arguing that Hypercom is unable to identify any evidence of intent and cannot show that Omron substantially assisted with the commission of any tort. The Court, however, finds that Omron's request for summary judgment on Hypercom's aiding and abetting claim must be denied as genuine issues of material fact remain for trial. There is evidence in this case that would allow a reasonable person to conclude that Omron knew that Verve's patent infringement suits were baseless and then facilitated Verve's alleged wrongful conduct.[4]

### 2.   **Malicious Prosecution**

Under Arizona law, a malicious prosecution claim exists where a defendant "(1) instituted a civil action which was (2) motivated by malice, (3) begun without probable cause, (4) terminated in the Plaintiff's favor and damaged the plaintiff." Bradshaw v. State Farm Mut. Auto Ins., 758 P.2d 1313, 1319 (Ariz. 1988). Furthermore, in this state a defendant may be held liable for malicious prosecution as an instigator of the wrongful civil actions, even if the defendant was not a party to the civil actions that gave rise to the malicious prosecution claim Id. Omron argues that it is entitled to summary judgment on Hypercom's malicious prosecution claim because there is no evidence that Omron instigated any civil proceeding against Hypercom. This Court disagrees. Genuine issues of material fact remain regarding Plaintiff's malicious prosecution claim.

### D.   **Noerr-Pennington Immunity**

Omron argues that it is entitled to judgment as a matter of law on Hypercom's state law claims since Verve, and thus Omron, is entitled to immunity for maintaining civil suits

---

[4]Omron contends that Hypercom has conceded to patent infringement because it failed to sufficiently dispute the infringement alleged by Omron in its opposition brief and controverting statement of facts. The Court finds Omron's contention without merit. A review of the record before the Court reflects Hypercom's consistent denial of any patent infringement.

- 6 -

1 pursuant to the Noerr-Pennington Doctrine. The Court finds this argument without merit.
2 In the Ninth Circuit, a malicious prosecution claim may proceed as long as the Plaintiff can
3 demonstrate that the prior action was initiated without probable cause. <u>Hydranautics v.</u>
4 <u>Filmtec Corp.</u>, 204 F.3d 880, 886 (9th Cir. 2000). Furthermore, the "objectively baseless"
5 standard as used in Noerr-Pennington immunity is equated with "lack of probable cause" as
6 a required element of a malicious prosecution claim. <u>Id.</u> Generally, the probable cause
7 element of malicious prosecution is conclusively established where the defendant in the
8 underlying action achieved a favorable result at the trial court, even if the trial court decision
9 is later reversed on appeal. <u>Id.</u> It is undisputed that the patent infringement suit filed by
10 Verve against Hypercom in the District of Arizona was concluded to be objectively baseless
11 by the Honorable Frederick J. Martone. <u>See</u> <u>Verve L.L.C. v. Hypercom Corp.</u>, 2006 WL
12 2390505. As such, Noerr-Pennington immunity does not apply, and the Court rejects
13 Omron's arguments to the contrary.

14 **E.    Preemption Based on Federal Patent Law**

15 Omron contends that Hypercom's state law claims are preempted by federal law.
16 Specifically, Omron argues that Hypercom's state law claims based on bad faith misconduct
17 in the ITC proceeding are eliminated on preemption principles. To support its position,
18 Omron cites to the Federal Circuit case, <u>Abbott Laboratories v. Brennan</u>, 952 F.2d 1346
19 (Fed. Cir. 1992). Omron argues that the <u>Abbott Laboratories</u> case stands for the proposition
20 that federal patent law preempts common law torts which consist of nothing more than
21 misconduct in administrative patent proceedings. This Court, however, will apply the law
22 of the Ninth Circuit which is in direct opposition. According to this circuit, federal law does
23 not preempt Hypercom's state law claims. In <u>U.S. Aluminum Corp. v. Alumax, Inc.</u>, 831
24 F.2d 878, 881 (9th Cir. 1987), the Ninth Circuit Court of Appeals recognized that although
25 conflict is possible between state malicious prosecution laws and federal patent laws, the
26 policies underlying each are not inherently antithetical. Patents do not create an exemption
27 from state malicious prosecution laws." <u>See also</u> <u>Hydronnautics v. FilmTec Corp.</u>, 204 F.3d
28 880, 886 (9th Cir. 2000) (approving state law malicious prosecution claim arising from patent

- 7 -

1   infringement action). Accordingly, the Court concludes that Hypercom's state law claims are
2   not preempted by federal law; therefore, summary judgment in Omron's favor based on
3   preemption principles is denied.
4       Therefore,
5       **IT IS ORDERED** that Omron's Second Motion for Summary Judgment (Doc. 136)
6   is **DENIED**, and Hypercom's Motion to Strike Inadmissible Evidence and to Preclude
7   Testimony of James Dunlop (Doc. 146) is **DENIED** without prejudice.
8       Due to the resolution of the dispositive motion, **IT IS FURTHER ORDERED** that
9   the parties file a Joint Pretrial Statement with the Court on or before **March 22, 2007.** The
10  parties are to refer to the Order Setting Scheduling Conference (Doc. 2) for the required Joint
11  Pretrial Statement format. The Pretrial Conference is scheduled for **Monday, April 2, 2007**
12  **at 3:30 p.m.** in Courtroom 601 before the Honorable Paul G. Rosenblatt.
13      DATED this 22nd day of February, 2007.

Paul G. Rosenblatt
United States District Judge